UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JUDY LITTLE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) No. 4:05-CV-01954 AGF |
| | ) |
| CITY OF ST. LOUIS FORESTRY | ) |
| DIVISION, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This employment discrimination case is before the Court on the parties' cross motions for summary judgment.¹ Judy Little, a female resident of St. Louis, Missouri, filed this pro se action against her employer, the City of St. Louis Forestry Division, alleging the City discriminated against her based on her age and gender in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. For the reasons set forth below, Defendant's motion for summary judgment is granted.

## BACKGROUND

The record establishes the following undisputed facts. Every year, the City of St. Louis, Missouri ("the City") hires temporary workers to do jobs around the City on a seasonal basis. These jobs fall under the category of "limited term utility worker" and

---

¹ The parties have consented to the exercise of authority by the undersigned United States Magistrate Judge under 28 U.S.C. § 636(c).

1

applicants must submit to an examination to qualify for the job. Two City divisions which hire limited term utility workers are the Forestry Division and the Street Department. Plaintiff worked as a limited term utility worker for the Forestry Division in 2000 and 2003 and for the Street Department in 2002. Defendant's Statement of Uncontroverted Facts, ¶ 4.[2]

While working in these positions, Plaintiff was the subject of various disciplinary actions. Plaintiff, however, alleges she was discriminated against based on her age and gender. At the time Plaintiff alleges she was discriminated against by the City, she was fifty years old. Def. State. of Uncontro. Facts, ¶ 2.

**Employment with the Forestry Division in 2000**

Plaintiff was employed by the Forestry Division as a limited term utility worker from April 10, 2000 to September 29, 2000. On July 14, 2000, Plaintiff received a three-day suspension and written reprimand for insubordination and abusive conduct toward her immediate supervisor, Antonio Stokes. Id. ¶ 4; Def. Exhibit G.[3] The "Change in Employee Status" form and Official Report for this disciplinary action also noted that "[Plaintiff] ha[d] previously been re-assigned from other crews due to disagreement with her supervisor." Def. Exhibit G. Plaintiff was advised of the charges against her, and

---

[2] Defendant's Statement of Unconverted Facts is hereafter abbreviated as "Def. State. of Uncontro. Facts."

[3] Defendant's Exhibits A-Q are filed as attachments 3-20 to its Statement of Uncontroverted Facts, Doc. #19.

was given an explanation of the charges and an opportunity to present her version of any disputed facts or circumstances that might mitigate the proposed penalty. Id.

**Employment with the Street Department in 2002**

Plaintiff was employed by the Street Department as a limited term utility worker from April 1, 2002 to November 4, 2002. On July 24, 2002, Plaintiff was reprimanded for insubordination for failing to follow direct orders to put on her safety vest while working in a traffic lane. Def. Exhibit K. After being instructed initially by Ernest Armstrong, the lead utility worker, Plaintiff refused and became "loud and disruptive." Armstrong then notified Oscar Reed, the labor foreman, who reiterated Armstrong's order. Plaintiff again became agitated and refused to comply with the order. Thereafter, Dennis White, the labor supervisor, was called to the location to speak to Plaintiff about the need to wear the safety vest. Even so, Plaintiff continued her "loud and belligerent behavior" and refused to comply with the order. As a result, Plaintiff was released from duty for the remainder of the day and was instructed to report to White's office the following morning.

The next morning, July 25, 2002, Plaintiff met with White, Reed, and Todd Waelterman, the Commissioner of Streets. They advised Plaintiff of the charges against her and gave her the opportunity to present her version of any disputed facts or any circumstances which might mitigate the proposed penalty. The report notes that "[Plaintiff] was very loud and disrespectful, stating she would not wear a safety vest, felt

3

it was unimportant and wouldn't save her from vehicles or accidents." Id. Plaintiff was suspended for twenty-one days without pay pursuant to Administrative Regulation 117.

On October 8, 2002, Plaintiff failed to report for duty and failed to follow established departmental policy for notifying the appropriate management official of any inability to report. Def. Exhibit L. The following day, White and William Burkhardt, labor foreman, met with Plaintiff and advised her of the charges against her. Again, Plaintiff was given the opportunity to present her version of any disputed facts or circumstances which might mitigate the proposed penalty. The report notes that Plaintiff stated that "she just didn't call," and admitted that she had not notified anyone of her absence. Plaintiff was suspended for three days without pay pursuant to Administrative Regulation 117.

On October 28, 2002, Plaintiff was dismissed from the Street Department as the result of her unsatisfactory attendance record. Def. State. of Uncontro. Facts, ¶ 8; Def. Exhibit J (copy of Employee Status Form, dated Oct. 28, 2002, reflecting Plaintiff's dismissal).

**Employment with the Forestry Division in 2003**

Plaintiff was employed again by the Forestry Division as a limited term utility worker from April 21, 2003 to October 4, 2003. On June 27, 2003, Plaintiff was instructed by the labor foreman on duty to spray a vacant lot at 2107 E. Desoto Street. Def. Exhibit F. After she refused to do so, Plaintiff was instructed to return to the shop, clock out, and return home. Due to the seriousness of the offense, Plaintiff also was

4

given a fourteen-day suspension. As before, Plaintiff was advised of the charges against her, given an explanation of the charges and an opportunity to present her version of any disputed facts or any circumstances that might mitigate the proposed penalty. The report also warned Plaintiff that "[a]ny further reoccurrence [on Plaintiff's part] will result in dismissal as determined by the Appointing Authority." Id.

**Plaintiff's Applications & Examinations for Limited Term Utility Worker**

On June 26, 2003, Plaintiff applied for the position of utility worker (presumably for the 2004 season since she was already employed as a utility worker at the time she applied). Plaintiff was given performance examination #8941 for this position on October 21, 2003. The City uses such examinations to rank candidates for the positions of utility worker and limited term utility worker. Affidavit of Roger McCurley, ¶ 2 [Doc. #19-2]. From the results of these examinations, an employment list is prepared consisting of the names of those individuals who met the minimum requirements imposed for the test and who received the rating required for eligibility, ranked in order of such rating from highest to lowest. Id. Plaintiff scored 89.09 on the #8941 exam, which gave her a rank of #42 on the eligibility list for the utility worker position. Id. ¶ 5.

By January 2004, however, the examination used to rank candidates for the positions of utility worker and limited term utility worker had been changed after it was determined that the performance test portion of the examination used previously was too time-consuming. Starting in January 2004, the City began using examination #8999 to evaluate and rank employment candidates. See Def. Exhibit C (copy of the 2004 job

announcement for utility workers). This examination eliminated the performance portion of the test, and assessed candidates only on their employment experience, education, and training listed within their employment application. The results of this examination were then used to compute each candidate's experience and training evaluation.

Although candidates like Plaintiff who had taken examination #8941 for the position of utility worker already were automatically placed on the 2004 eligibility list, Plaintiff reapplied to be a limited term utility worker on January 23, 2004 and took examination #8999. McCurley's Affidavit, ¶ 9 [Doc. #19-2]. For candidates who chose to take examination #8999 even though they were on the eligibility list for 2004 already, the highest examination score achieved was used. Id. ¶ 11. When Plaintiff reapplied in January 2004 and took examination #8999, her score was 76.32. Id. ¶ 10. Accordingly, Plaintiff's previous score of 89.09 was used. Id. ¶ 11. Even so, when the two eligibility lists (using examination results from #8941 and #8999) were combined, Plaintiff's ranking fell to #118. Id. ¶ 12.

**The Hiring of Utility Workers for the 2004 Season**

Each Division within the City that requests potential candidates to fill seasonal, limited term utility worker positions must file a requisition form with the Personnel Department making the request. Affidavit of Gregory Hayes, ¶ 5 [Doc. #19-6]. The Personnel Department then certifies a list of candidates based upon their order of rank and provides them to the division. The division then hires candidates from this list. Id.

6

On January 29, 2004, Gregory Hayes, Acting Commissioner of the Forestry Division, requested seasonal utility workers for the Forestry Division for the 2004 season. Id. ¶ 6, 7; see also Def. Exhibit D (copy of Personnel Requisition #03-010F, dated Jan. 29, 2004). In response, the Personnel Department furnished Hayes a list of candidates who had been certified for employment with the City as limited term utility workers pursuant to Exam #8999. Def. Exhibit E (copy of the list received by Hayes from the Personnel Department, dated March 8, 2004). Plaintiff's name was included on this list and, at that time, she was ranked #76. Def. Exhibit E, at 5.

When selecting candidates from the list, Hayes consulted Sylvester Brandon, Labor Supervisor for the Forestry Division. Brandon was familiar with Plaintiff because she had worked as a seasonal employee with the Forestry Division during the 2003 season. Brandon observed that "[Plaintiff] required too much close supervision at all times and found that she did not work well with her foreman or other employees." Id. ¶ 12. Hayes also had access to Plaintiff's personnel file, which included Plaintiff's disciplinary record. Id. ¶ 13. Because of this work history and because "there were other candidates more suitable for employment with the Forestry Division," Plaintiff was not selected for employment with the Forestry Division as a seasonal employee in 2004. Id. ¶ 11, 17.

On April 7, 2004, Hayes again requested seasonal utility workers for the Forestry Division for the 2004 season. Id. ¶ 18; see also Def. Exhibit H (copy of Personnel Requisition #03-015F, dated April 7, 2004). In response, Hayes received a list of

7

candidates who had been certified for employment with the City as limited term utility workers pursuant to Exam #8999. Plaintiff's name was included on the list as an alternative candidate for employment with the Forestry Division. Def. Exhibit I. However, Plaintiff's name was marked with the notation "NA," which indicated that Plaintiff was unavailable for employment with the Forestry Division as a seasonal employee in 2004 because she was contacted for possible seasonal employment and Plaintiff failed to respond. Hayes' Affidavit, ¶ 22 [Doc. #19-6].

The City Refuse Division also requested a list of utility workers in April 2004. Plaintiff's name was included on the list of eligible candidates which was provided to the Refuse Division on April 12, 2004. Def. State. of Uncontro. Facts, ¶ 36; Def. Exhibit M (copy of Plaintiff's deposition, taken May 24, 2006). Plaintiff interviewed for this position and testified in her deposition that when she called the Refuse Division back the Monday following her interview, she was told that they had hired someone else with more experience. Def. Exhibit M, at 85.

**Plaintiff's 2006 Employment**

Plaintiff began working as a limited term utility worker in the City's Parks Department in May 2006 and was still working in this capacity as of December 2006. Def. State. of Uncontro. Facts, ¶ 38.

**Plaintiff's Administrative Claim History**

On July 31, 2004, Plaintiff filed a charge of discrimination with the Missouri Commission on Human Rights ("MCHR") under the Missouri Human Rights Act

8

("MHRA"), alleging that she was denied a position with the Forestry Division due to her age. Def. Exhibit N (copy of charge filed with the MCHR, date-stamped July 31, 2004). On August 10, 2004, the MCHR sent Plaintiff's age discrimination charge to the Equal Employment Opportunity Commission ("EEOC") for dual filing purposes. Def. Exhibit O (copy of EEOC Notice of Plaintiff's charge of discrimination, dated August 10, 2004). The MCHR issued Plaintiff a Notice of Right to Sue one year later, on August 10, 2005. See Pl.'s Compl., unmarked exhibit; Def. State. of Uncontro. Facts, ¶ 41.

**Plaintiff's Title VII Complaint**

Plaintiff filed a complaint against the City's Forestry Division on October 24, 2005, asserting a claim for employment discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), et seq. Pl.'s Compl., ¶ 1. In her complaint, Plaintiff alleges that the City's Forestry Division discriminated against her on the basis of her age and gender by: (1) failing to employ her; (2) failing to promote her; (3) terminating her; and (4) suspending her for fourteen days in 2003.

## DISCUSSION

**The Parties' Motions for Summary Judgment**

Defendant timely filed its motion for summary judgment on December 14, 2006, arguing that: (1) there are no facts to support that Plaintiff was ever denied a promotion or was fired at any time while working for the Forestry Division; (2) Plaintiff failed to exhaust her administrative remedies with regard to her claim of sex discrimination; (3) certain claims are time-barred; (4) Plaintiff's age claims do not fall under Title VII; and

(5) Plaintiff has failed to establish a prima facie case for age or sex discrimination. Plaintiff did not file a formal response to Defendant's motion, but rather, filed her own motion for summary judgment on January 9, 2007.[4] Although the Court shall also construe Plaintiff's motion as a response to Defendant's motion for summary judgment, the Court notes that Plaintiff did not address any of the arguments raised in Defendant's motion for summary judgment.

Upon review of the file, the Court finds Defendant's motion to be dispositive of the case. Plaintiff has neither refuted the undisputed facts asserted by Defendant, which demonstrate Defendant's entitlement to judgment as a matter of law, nor has she demonstrated that she is entitled to judgment.

**Summary Judgment Standard**

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When ruling on a motion for summary judgment, a court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the record. Sallis v. Univ. of Minn., 408 F.3d 470, 474 (8th Cir. 2005).

---

[4] The Court notes that Plaintiff's motion for summary judgment was filed after the December 4, 2006 filing deadline for motions for summary judgment set forth in the Case Management Order. Plaintiff also failed to file a memorandum in support of her motion for summary judgment in violation of Local Rule 7-4.01(A) and (C).

The moving party bears the burden of showing the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Enterprise Bank v. Magna Bank, 92 F.3d 743, 747 (8th Cir. 1996). This burden is satisfied when the movant shows that if the evidentiary record were reduced to admissible evidence at trial, it would be insufficient to permit the non-movant from carrying its burden of proof. Celotex, 477 U.S. at 322-23.

> Once the moving party has met this burden,
>
> an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e). In other words, Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. However, "[e]ven when a defendant's motion for summary judgment is not opposed by the plaintiff, a district court must satisfy itself that, on the record before it, there are no genuine issues of material fact as to at least one of the necessary elements of plaintiff's case." Noland v. Commerce Mortgage Corp., 122 F.3d 551, 553 (8th Cir. 1997).

11

**Plaintiff's Claims based on Failure to Promote and Termination**

In her complaint, Plaintiff alleges that the Forestry Division discriminated against her by failing to promote her and improperly terminating her from employment. Defendant argues, however, that there is no evidence that Plaintiff was qualified or eligible for promotion and was passed over for any reason, or that she was terminated from the Forestry Division at any time. The Court agrees.

Plaintiff's personnel history is devoid of any evidence that Plaintiff ever qualified for or was eligible for promotion and was passed over, or that she was terminated at any time from the Forestry Division.[5] Moreover, Plaintiff does not present any affidavit, deposition, or other exhibit which establishes that she was denied a promotion or was terminated from the Forestry Division. Since these facts are material in proving Plaintiff's claim that the Forestry Division failed to promote her or improperly terminated her, summary judgment on these claims is proper.[6]

**Plaintiff's Sex Discrimination Claim**

With regard to Plaintiff's Title VII claim of sex discrimination, Defendant first argues that it is entitled to summary judgment on this claim because Plaintiff failed to

---

[5] On October 28, 2002, Plaintiff was terminated as a limited term utility worker from the City's <u>Street</u> Department.

[6] The Court also notes that Plaintiff did not assert these claims in her MCHR charge of discrimination, and thus does not appear to have exhausted her administrative remedies with regard to her claims asserting failure to promote and termination. Failure to exhaust, however, is an "affirmative defense that a defendant must prove." See <u>Miles v. Bellfontaine Habilitation Center</u>, No. 06-2318, slip op. at 2 (8th Cir. April 12, 2007). Defendant did not raise failure to exhaust with regard to these claims.

raise this claim in her MCHR charge. Title VII requires a claimant to timely file a discrimination charge with the EEOC before he or she may bring a Title VII action in court. 42 U.S.C. § 2000e-5(e)(1). "'[E]xhaustion of administrative remedies is central to Title VII's statutory scheme because it provides the EEOC the first opportunity to investigate discriminatory practices and enables it to perform its roles of obtaining voluntary compliance and promoting conciliatory efforts.'" Duncan v. Delta Consol. Indus., Inc., 371 F.3d 1020, 1024 (8th Cir. 2004) (quoting Shannon v. Ford Motor Co., 72 F.3d 678, 684 (8th Cir. 1996)). "Allegations outside the scope of the EEOC charge . . . circumscribe the EEOC's investigatory and conciliatory role, and for that reason are not allowed." Kells v. Sinclair Buick-GMC Truck, Inc., 210 F.3d 827, 836 (8th Cir. 2000).

When Plaintiff filed her administrative claim with the MCHR, she indicated that the sole cause of the discrimination she suffered was due to her "age." Def. Exhibit N. Although she had an opportunity to do so, Plaintiff did not check the box clearly marked "sex." Id. She also specifically claimed that the Forestry Division hired younger, less qualified seasonal employees. As such, the charge of "age" discrimination was the only claim that was investigated by the MCHR. Id. This is also clear in the "Notice of Charge of Discrimination" form sent by the MCHR to the EEOC for dual filing purposes on August 10, 2004, which indicated that the sole reason for the alleged discrimination was due to Plaintiff's age. Def. Exhibit O.

As the Eighth Circuit has acknowledged in similar cases, this Court is "mindful" that Plaintiff is a pro se litigant. As such,

> '[c]ourts should not use Title VII's administrative procedures as a trap for unwary pro se civil-rights plaintiffs . . . . We . . . , therefore, when appropriate, construe civil-rights and discrimination claims charitably.' [Citation omitted]. Even so, 'there is a difference between liberally reading a claim which lacks specificity and inventing, *ex nihilo*, a claim which simply was not made.'

Duncan, 371 F.3d at 1025 (quoting Shannon, 72 F.3d at 685). Here, the Court believes that Plaintiff's MCHR charge is fairly read to assert only age discrimination, and that summary judgment on Plaintiff's Title VII claim for sex discrimination is proper for failure to exhaust administrative remedies.

Though not asserted by Plaintiff, the Court does acknowledge that in the second paragraph of the MCHR charge, Plaintiff asserts "I was also informed that the Forestry did not hire women my age so I need not apply." Inasmuch as this sentence can be read as asserting a combination of age and gender discrimination, the Court will address Plaintiff's sex discrimination claim on the merits.

Plaintiff has not offered any direct evidence of discrimination, and as such, her claim of discrimination must be analyzed under the burden-shifting standards expressed in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). See Arraleh v. County of Ramsey, 461 F.3d 967, 974-75 (8th Cir. 2006). This burden-shifting analysis requires a plaintiff to first present a prima facie case of discrimination. McDonnell, 411 U.S. at 802; Arraleh, 461 F.3d at 975. If the plaintiff succeeds in this endeavor, the burden then shifts to the defendant to rebut the prima facie case by articulating one or more legitimate, nondiscriminatory reasons for its employment decision. McDonnell, 411 U.S. at 802;

Arraleh, 461 F.3d at 975. If the defendant presents a nondiscriminatory reason for its decision, the plaintiff then has the opportunity to demonstrate that the proffered reason is pretextual and not the true reason for the employment decision. McDonnell, 411 U.S. at 804; Arraleh, 461 F.3d at 975-976.

A plaintiff establishes a prima facie case in a "failure to hire" case when she proves that (1) she is a member of a protected class; (2) she was qualified for the position for which the employer was accepting applications; (3) she was denied the position; and (4) the employer hired someone from outside the protected class. Arraleh, 461 F.3d at 975.

Here, Plaintiff's claim fails for two reasons. First, Plaintiff has failed to establish her prima facie case. It is not enough to allege, in conclusory fashion, that other similarly situated employees were treated differently. Plaintiff must show that males were treated differently than she was, and that those males were similarly situated in "all relevant respects." Ricks v. Riverwood Int'l Corp., 38 F.3d 1016, 1019 (8th Cir. 1994). "The test for whether employees are similarly situated to warrant a comparison to the plaintiff is 'rigorous.'" Cronquist v. City of Minneapolis, 237 F.3d 920, 928 (8th Cir. 2001) (quoting Harvey v. Anheuser-Busch, Inc., 38 F.3d 968, 972 (8th Cir. 1994)). Here, Plaintiff has not specifically identified any similarly situated employees.

Even if one assumed, arguendo, that Plaintiff could establish her prima facie case, Defendant has established legitimate, nondiscriminatory reasons for its failure to hire

Plaintiff in 2004. With regard to the March 8th list of candidates, Defendant has established that Mr. Hayes did not hire Plaintiff because there were more qualified candidates and because of her disciplinary record. In April 2004, when Mr. Hayes again requested seasonal workers, Plaintiff was not hired because the records showed she had been contacted for employment but had failed to respond.[7] Plaintiff nowhere refutes these reasons, and makes no effort to show they are pretextual. Indeed, from her own deposition testimony, it appears she is assuming discrimination must have occurred because she can think of no other reason why she was not hired. Such assumptions are not sufficient. See Mayer v. Nextel West Corp., 318 F.3d 803, 809 (8th Cir. 2003) ("Evidence, not contentions, avoids summary judgment.").

**Plaintiff's June 2003 Suspension**

Plaintiff also claims that she was unfairly suspended on June 28, 2003. As Defendant correctly asserts, however, this claim is time-barred.

In Missouri, a plaintiff has only 300 days from the occurrence of an allegedly discriminatory act in which to file a timely charge with either the EEOC or the MCHR.

---

[7] Though Plaintiff did not preserve or assert claims based on the failure of the Refuse Division to hire her, here, too, Defendant established someone with more experience was hired.

29 U.S.C. § 626(d)(2).[8] Plaintiff filed her charge of discrimination on July 31, 2004, which is more than 300 days following the alleged unfair suspension she received notice of on June 27, 2003 and which took effect on June 28, 2003. Therefore, Plaintiff's unfair suspension claim is time-barred.

The Court also notes that Plaintiff testified at her deposition that the June 27, 2003 incident which gave rise to the suspension on June 28, 2003 was "not related to discrimination." See Exhibit M, at 11. Summary judgment on this claim would be appropriate for this reason as well.

**Plaintiff's Age Discrimination Claim**

Finally, Plaintiff asserts a claim of age discrimination, contending that she was not hired in 2004 because of her age. Again, Plaintiff's claim fails for several reasons.

First, Plaintiff's complaint is deficient because it is brought solely under Title VII of the Civil Rights Act of 1964. Title VII prohibits employment discrimination based on

---

[8] (d) Filing of charge with Commission; timeliness; conciliation, conference, and persuasion

No civil action may be commenced by an individual under this section until 60 days after a charge alleging unlawful discrimination has been filed with the Equal Employment Opportunity Commission. Such a charge shall be filed –
. . . .
(2) [I]n a case to which section 633(b) of this title applies, within 300 days after the alleged unlawful practice occurred, or within 30 days after receipt by the individual of notice of termination of proceedings under State law, whichever is earlier.

29 U.S.C. § 626(d)(2) (emphasis added).

race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a)(1). Age discrimination, however, is not actionable under Title VII.

Further, the Court finds that Plaintiff's age claim fails even if it had been properly brought under the Age Discrimination in Employment Act of 1967 ("ADEA"). Without direct evidence of discrimination, age discrimination claims are also evaluated under the McDonnell Douglas burden-shifting framework. McDonnell Douglas, 411 U.S. at 802; Schiltz v. Burlington N. R.R., 115 F.3d 1407, 1412 (8th Cir. 1997). Under this framework, an employee bears the initial burden of establishing a prima facie case. Id. To state a prima facie case of age discrimination under the ADEA for failure to hire, Plaintiff must show that (1) she is a member of a protected age group (over 40); (2) she was qualified for the position she applied for; (3) she was not hired; and (4) the employer filled the position with a person sufficiently younger to permit an inference of age discrimination. Schiltz, 115 F.3d at 1412.

If Plaintiff establishes a prima facie case, the burden shifts to the employer, who must rebut the presumption of discrimination with evidence of a legitimate, nondiscriminatory reason for its decision not to hire Plaintiff. Id. If the employer meets that burden, the employee may prevail by proffering evidence that the employer's reason was a pretext for intentional discrimination. Id.

Here, Plaintiff does not present any affidavit, deposition, or other exhibit which establishes that the position she applied for was filled with a person sufficiently younger. Plaintiff does offer the name of Sameerah Johnson and states that Ms. Johnson was a

18

younger woman who was allowed to return for seasonal employment without reapplying for the position. Defendant has established, however, that Sameerah Johnson was a <u>career</u> seasonal employee, who had earned the right to return for seasonal employment every year without reapplying. Hayes' Affidavit, ¶ 3, 4 [Doc. #26, Exh. 1]. An employee, such as Plaintiff, who has received a suspension does not qualify for career status. <u>Id.</u> ¶ 5. As such, Plaintiff and Ms. Johnson were not similarly situated or comparable. Accordingly, summary judgment is proper as Plaintiff has failed to establish a crucial element of her age discrimination claim.

Moreover, a review of the evidence negates Plaintiff's <u>prima facie</u> claim. At the time Plaintiff alleges she suffered age discrimination, she was fifty years old. The evidence provided by Defendant shows that the average age of limited term utility workers within the Forestry Division in 2004 was approximately forty-two. Thirty-seven employees were hired by Forestry as limited term utility workers within the relevant period: 6 were either 50 or older; 9 were between 45 and 49; and 7 were between 40 and 44 (as such, 22 out of 37 or nearly 60% of those hired, were age 40 or older). Given these facts, there is little basis for any inference that age was a factor. <u>See</u> <u>Schlitz</u>, 115 F.3d at 1413 (five year age disparity is insufficient to raise an inference of age discrimination since the individuals hired are not "substantially younger").

In addition, as discussed above, Defendant has established legitimate, nondiscriminatory reasons why it did not hire Plaintiff in 2004, and Plaintiff has made no

showing, whatsoever, that those reasons were pretextual. As such, Defendant is entitled to summary judgment on Plaintiff's age discrimination claim for this reason as well.

## **CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's motion for summary judgment [Doc. #18] is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's motion for summary judgment [Doc. #23] is **DENIED**.

_____
AUDREY G. FLEISSIG
UNITED STATES MAGISTRATE JUDGE

Dated this 13th day of April, 2007.